IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN JAY HOFFMAN,   Individually and as The Trustee of STEVEN J. HOFFMAN REVOCABLE TRUST                     Pldaintiffs | ) ) ) ) ) ) | |
| v. | ) ) | Case No.  1:23-cv-06707 |
| JANE DOE;  BREFKO GROUP LLC; TURBO TOUCHDOWN, LLC;  DJACK ALT MINT, LLC; CHEST TIES, INC.; and KADER DOURFAYE, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS BREFKO GROUP LLC, DJACK ALT MINT, LLC, AND KADER DOURFAYE

Plaintiffs, STEVEN JAY HOFFMAN and STEVEN J. HOFFMAN REVOCABLE TRUST ("Plaintiffs"), pursuant to Federal Rule of Civil Procedure 55(b)(2), through their undersigned counsel, hereby move this Honorable Court for a Default Judgment against Defendants Brefko Group LLC.(" Brefko"), Djack Alt Mint, LLC("Djack"), and Kader Dourfaye("Dourfaye").

### I.        INTRODUCTION

Defaulting Defendants defrauded and targeted Plaintiff Hoffman, a resident of the State of Illinois and this judicial district, through a sophisticated fraudulent scheme. Defaulting Defendants induced Plaintiffs to transfer approximately $3,518,300, including $1,963,300 to the bank accounts of Defendants through multiple third-party platforms. Defendants Dourfaye, Brefko, and Djack(collectively "Defendants" ) were properly served but have not entered appearances, pleaded,

or otherwise responded to the Complaint. Therefore, the court should grant Plaintiffs' Motion for Default Judgment based on Federal Rule of Civil Procedure 55(b)(2).

## II.    STATEMENT OF FACTS

On February 18, 2023, Plaintiff Hoffman received an unsolicited text message from an individual using the aliases "Beatrice E. Lovia" and "Beatrice E. Watson" (referred to as "Defendant Doe"), (DKT #1, para. 26). After obtaining Plaintiff Hoffman's trust, Defendant Doe started soliciting large sums of money from Plaintiffs to invest in a house in Germany at a below-market price. She also claimed that her sister had associates who could structure the real estate deal to reduce taxes on their anticipated returns. This structure required sending funds for their investment through various limited liability companies in the U.S., including Defendants Dourfaye, Brefko, and Djack. From April 2023 to July 2023, Brefko received seven (7) wire transfers from Plaintiff's bank account to Wells Fargo Bank and JPMorgan Chase Bank accounts that Brefko held and controlled, totaling $1,183,300(DKT #1, para. 6 &43)(Exhibit A). On May 3, 2024, Dourfaye received a wire transfer from Plaintiff's bank to an E*TRADE Bank account that Dourfaye held and controlled, totaling $150,000 (DKT #1, para. 10 &43). Djack received two (2) wire transfers from Plaintiff's bank account to JPMorgan Chase account that Djack held and controlled, totaling $630,000(DKT #1, para. 8 &43).

From February to July 2024, based on Defendant Doe's false representations, Plaintiff transferred a total of $3,518,300, including $1,963,300 to the bank accounts held and controlled by Defendants. (DKT. #1, paras 42-44)(Ex. A & B). Upon investigation, it was revealed that all the documents, including but not limited to Deed of Lease and hospital loan, provided by Defendant Doe were fabricated. The fabricated documents were used to gain Plaintiff's trust and reliance. The various Defendants named in the complaint (other than Defendant Doe) could have

functioned as what are commonly referred to as "money mules," facilitating the transfer of funds to the main perpetrators of the fraudulent scheme.

## III.    PROCEDURAL HISTORY

Plaintiffs filed a verified complaint on August 31, 2023 (Dkt. #1). On September 13, 2023, Plaintiffs issued summonses to Defendants Djack Alt Mint, LLC ("Djack"), Brefko Group LLC ("Brefko"), and Kader Dourfaye ("Dourfaye"). Dourfaye was served by a process server at his residence in New York on October 26, 2023 (Dkt. #39). Djack, through its registered agent, Darius Akoto Jackson, was attempted to be served by a process server after multiple attempts since November 15, 2023 (Dkt. #42 & 57). Similarly, Brefko was attempted to be served by and through its registered agent, James Brefokesse, on multiple occasions since November 2023 (Dkt. #56 & 57). However, attempts to serve Djack and Brefko in the traditional manner failed. On April 4, 2024, Plaintiffs filed a Motion for Leave of Court for substituted service of a complaint on Defendants Djack Alt Mint, LLC and Brefko Group LLC, via the New Jersey Department of Treasury (Dkt. #57). On April 5, 2024, the court granted Plaintiffs' motion for substituted service on these two defendants. Alias Summons were then issued for Djack and Brefko on April 15, 2024. Subsequently, Brefko and Djack were served via the New Jersey Department of Treasury on April 18, 2024 (Dkt. #61 & 62). Defendants Dourfaye, Brefko, and Djack were properly served but have not entered appearances, pleaded, or otherwise responded to the Complaint(Exhibit B). On June 7, 2024, the Clerk of the Court entered default against Defendants Dourfaye, Brefko, and Djack(Dkt. #68).  Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiffs now move this Court for a default judgement, finding that Defaulting Defendants are liable on Counts II, III, IV, V, and VI of Plaintiffs' Complaint.

## IV. LEGAL STANDARD FOR DEFAULT JUDGMENT

After the entry of default, a plaintiff may move for default judgment under Rule 55(b). *Fed. R. Civ. P. 55(b).*Federal Rule of Civil Procedure 55(b)(2) authorizes district courts to enter a default judgment against a properly served defendant who failed to file a timely responsive pleading. *Cannon v. Washington, 321 F. App'x 501, 502 (7th Cir. 2009)* (citing Fed. R. Civ. P. 55(a), (b)(2)). While Federal Rule of Civil Procedure 55(b) gives district courts the power to enter default judgment, they must exercise discretion when doing so. See O'*Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993). Prior to entering a judgment of default, the court must determine whether (1) sufficient proof of valid service and jurisdiction has been provided; (2) the facts as unchallenged present a legitimate cause of action; and (3) entry of default judgment is otherwise proper under the circumstances. *Swaim v. Moltan Co*., 73 F.3d 711, 716 (7th Cir. 1996). *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 683 (D.N.J. 2015). When the court determines a defendant is in default, the court accepts as true the well-pleaded factual allegations in the complaint. *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007).

## V. LEGAL ARGUMENT

### A. The Court Has Subject Matter Jurisdiction Over The Action And Personal Jurisdiction Over The Parties.

Prior to entering a default judgment, a district court must determine whether it has subject matter jurisdiction over the action and personal jurisdiction over the parties. *Swaim v. Moltan Co.,* 73 F.3d 711, 716 (7th Cir. 1996). In addition, the court must determine whether the defaulting party was properly served with the pleadings. See *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 300-03 (7th Cir. 1991)(stating a default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void and should be set aside.)

4

a) **The Court has Subject Matter Jurisdiction over this Action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332.**

Before entering default judgment, the Court must address whether it has subject matter jurisdiction over the action. *Swaim,* 73 F.3d at 716. In this action, the Court has subject matter jurisdiction to adjudicate Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(Dkt. # 22-24).

To establish diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000." *Tilted Kilt Franchise Operating, LLC v. 1220, LLC,* No. 15-cv-10377, 2016 U.S. Dist. LEXIS 99250, at *11 (N.D. Ill. July 29, 2016). For diversity purposes, "[a] corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business" while "[a] natural person is deemed to be a citizen of the state where he is domiciled." *Alexander v. Group O, Inc.,* No. 4:23-cv-04207-SLD-JEH, 2023 U.S. Dist. LEXIS 223625, at *2 (C.D. Ill. Dec. 15, 2023). The citizenship of a limited liability company is determined by the citizenship of each member. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). Citizenship "depends on domicile—that is to say, the state in which a person intends to live over the long run." *Heinen v. Northrop Grumman Corp*., 671 F.3d 669, 670 (7th Cir. 2012).

In this action, Plaintiff Steven Jay Hoffman is domiciled in Chicago, Illinois and is a citizen of the State of Illinois. Hoffman is also the Trustee of the Steven J. Hoffman Revocable Trust. (Dkt. #4). Brefko Group LLC is a New Jersey limited liability company (Dkt. #1, para. 6). Based on information and belief, James Brefokesse is its member, who is domiciled in Parlin, New Jersey. Djack Alt Mint, LLC is a New Jersey limited liability company(Dkt. #1, para. 8). Based on information and belief, Darius Akoto Jackson is its registered agent and member, who is domiciled

in New Jersey. Kader Dourfaye is an individual who is domiciled in New York, New York(Dkt. #1, para. 10). There is complete diversity of citizenship among the parties because no other Defendant in this action is a citizen of the State of Illinois.  In addition to the diversity of the parties, the amount in controversy in this matter, exclusive of prejudgment interest and costs, is calculated as $3,518,300 dollars(Dkt. #1, paras, 1& 43).  Accordingly, the Court has diversity jurisdiction over this action.

To establish federal question jurisdiction pursuant to 28 U.S.C. § 1331, "a plaintiff must assert at least one claim that arises 'under the Constitution, laws or treaties of the United States.'" *Borghero v. Harmon*, 2023 U.S. Dist. LEXIS 197657 at *2 (quoting 28 U.S.C. § 1331)).  "To this end, a complaint must demonstrate 'either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. *Id.* (*quoting Franchise Tax Bd. of State of Cal. v. Const. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 27-28 (1983)).

This Court has federal question jurisdiction because the Complaint alleges that Defendants' misrepresentations of material fact induced Plaintiffs to participate in a fraudulent securities trading scheme in violation of Section 10(b) of the Securities Exchange Act ("Exchange Act"). *See* ECF No. 1 at ¶¶ 89-96.  Plaintiffs may bring this claim because Section 10(b) confers an implied right of action to private parties, *see Superintendent of Ins. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n. 9 (1971), and because the district courts have exclusive jurisdiction to hear claims brought under the Exchange Act.  *See* 15 U.S.C. § 78aa (stating "the district court . . . shall have exclusive jurisdiction of violations of this title . . . or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title.").

6

Because the Court has federal question jurisdiction over Plaintiffs' Securities Fraud claim, it has authority to exercise supplemental jurisdiction over Plaintiffs' non-federal claims arising from the same case or controversy. *McDonough v. Van Eerden,* 650 F. Supp. 78, 80 (E.D. Wis. 1986). Accordingly, this Court has diversity and federal question jurisdiction over the claims in this action.

### b) The Court has Personal Jurisdiction over Defendants

This Court has personal jurisdiction over Defendants in this action.  "[s]pecific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself." *Abelesz v. OTP Bank, 692 F.3d 638, 654 (7th Cir. 2012)* Where a Plaintiff asserts an intentional tort claim, Seventh Circuit courts apply the "effects doctrine." "Under the 'effects doctrine,' personal jurisdiction over a nonresident defendant is proper when defendant's intentional tortious actions aimed at the forum state cause harm to the plaintiff in the forum state, and the defendant knows such harm is likely to be suffered." *Riddell, Inc. v. Impact Protective Equip., L.L.C.*, 2003 U.S. Dist. LEXIS 13053, No. 03 C 3309, 2003 WL 21799935, *3 (N.D. Ill. July 25, 2003). The Seventh Circuit interprets the effects doctrine broadly to permit the state in which the victim of a tort suffers injury to entertain the suit, even if all other relevant conduct occurred outside the state. *Brunswick Bowling & Billiards Corp. v. Pool Tables Plus, Inc.*, No. 04 C 7624, 2005 U.S. Dist. LEXIS 6242, at *8-9 (N.D. Ill. Feb. 16, 2005).

This Court has personal jurisdiction over Defendants pursuant to the "effects doctrine." Plaintiffs have established that Defendants, including Dourfaye, Brefko, and Djack, participated in and benefited from the fraudulent house investment scheme expressly aimed at Plaintiffs for the sole purpose of gaining wrongful control and ownership of their assets.  In furtherance of this scheme, Jane Doe and other Defendants instructed Plaintiffs to wire funds to bank accounts held by various entities. Specifically, they instructed Plaintiffs to wire $1,183,300 to the bank accounts

maintained and controlled by Brefko (DKT #1, para. 6 & 43), $150,000 to the E*TRADE bank account maintained and controlled by Dourfaye (DKT #1, para. 10 & 43), and $630,000 to the JPMorgan Chase account maintained and controlled by Djack (DKT #1, para. 8 & 43). Defendants' intentional tortious conduct was calculated to cause injury to Plaintiffs in Illinois, and therefore jurisdiction over Defendants in Illinois is proper.

**B. There Is Sufficient Basis For The Court To Enter Final Judgment By Default Against Defendants Dourfaye, Brefko, And Djack**

Three factors control whether a court has a sufficient basis to enter final judgment against a defaulted party. The Court must determine (1) whether there is sufficient proof of service, *The Relational, LLC v. Hodges,* 627 F.3d 668, 671 (7th Cir. 2010) (2) whether a sufficient cause of action was stated. *Mercantile Bank v. Canovas*, 237 B.R. 423, 427 (Bankr. N.D. Ill. 1998); and (3) whether default judgment is proper. *Kay v. Individual*, No. 22-cv-3033--RJD, 2024 U.S. Dist. LEXIS 42430, at *6 (S.D. Ill. Feb. 22, 2024). Plaintiffs have met each of the factors necessary for the Court to find a sufficient basis to enter final judgment by default against Defendants Dourfaye, Brefko, and Djack.

**a) Plaintiffs Served Defendants Dourfaye, Brefko, and Djack properly with the Pleadings**

Plaintiffs properly served Defendants Dourfaye, Brefko, and Djack with the Summons and Complaints in this action. Pursuant to *Federal Rule of Civil Procedure* 4(h) a limited liability company may be served in the manner prescribed by *Rule* 4(e)(1) for serving an individual; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. *See Fed. R. Civ. P.* 4(h). *Rule* 4(e)(1) allows service to be effected by following the state law for serving a summons in the state where the district court is located or where service is made. *Fed. R. Civ. Pro. 4(e)(1).* In New Jersey, service upon an LLC is governed by the New Jersey Rules of Court, N.J.

8

Ct. R. 4:4 (a)(5), and the Revised Uniform Limited Liability Company Act (RULLCA), N.J.S.A. § 42:2C-17(b). The RULLCA service of process provision contains an additional method of service, providing, as a permissive alternative, where personal service in accordance with the court rules fails despite reasonably diligent efforts, service may be made upon the State filing office. *N.J.S.A. 42:2C-17(b). ATCF II, LLC v. Tao Invs., LLC,* 476 N.J. Super. 324, 328-329(2023).

Here, Plaintiffs successfully served Djack and Brefko with the Summons and Verified Complaint via the New Jersey Department of Treasury on April 18, 2024 , after multiple attempts to serve them in the traditional way failed (Dkt. #61 & 62). Dourfaye was served by a process server at his residence in New York on October 26, 2023 (Dkt. #39). Accordingly, Defendants Dourfaye, Brefko, and Djack were properly served with the pleadings as required by *Federal Rule of Civil Procedure* 4(h)(Ex. C).

### b) Plaintiffs' Verified Complaint Sufficiently Pleads Five Causes of Action Against Defendants Dourfaye, Brefko, and Djack.

Plaintiffs' Verified Complaint alleges five causes of action against Defendants: (1) Conversion; (2) Unjust Enrichment; (3) conspiracy; (4) Constructive Trust; and (5) securities fraud(Dkt.#1, paras, 65-96). When assessing whether Plaintiffs have stated a sufficient cause of action, the Court should assume the truthfulness of a plaintiff's well-pleaded factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 677-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Plaintiffs have sufficiently plead causes of action against Defendants and are entitled to default judgment against Defendants.

### 1. Conversion

Plaintiffs' Verified Complaint sufficiently pleads a cause of action for conversion against Defendants. To establish conversion in Illinois, a plaintiff must demonstrate that "(1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the

property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Joe Hand Promotions, Inc. v. Lynch,* 822 F. Supp. 2d 803, 806 (N.D. Ill. 2011).

Plaintiffs' Verified Complaint demonstrates that Plaintiffs are and continue to be the rightful owners of their assets totaling $3,518,300. Prior to the transfers, Plaintiffs possessed the immediate, absolute, and unconditional ownership of the $3,518,300 in their bank accounts. Plaintiff had transferred his assets and funds to various bank accounts owned, operated, controlled, and/or affiliated with Defendants for the purpose of a real estate deal. Due to their participation in Defendants' illegal scheme, they wrongfully acquired Plaintiffs' property under false pretenses and converted such property for their own use and benefit. Defendants have been enriched at Plaintiffs' expense and refused to return Plaintiffs' assets when Mr. Hoffman demanded their return. Defendants wrongfully interfered with Plaintiffs' rights and converted Plaintiffs' property for its own use and benefit. Accordingly, Plaintiffs have sufficiently pled a cause of action for conversion against Defendants.

## 2. Conspiracy

Plaintiffs' Verified Complaint sufficiently pleads a cause of action for conspiracy against Defendants. In the context of conspiracy claims under Illinois law, a plaintiff must prove that two or more people agreed to participate in an unlawful act, and that one of the parties performed a tortious act in furtherance of the agreement that caused an injury. *Brown v. City of Chicago,* 633 F. Supp. 3d 1122, 1132(N.D. Ill. 2022).

Plaintiffs' Verified Complaint demonstrates that Dourfaye, Brefko, and Djack engaged and participated in Defendants' illegal real estate investment scheme for the purpose of defrauding Plaintiffs. Jane Doe and the other defendants made multiple factual misrepresentations to

deceptively induce Plaintiffs into investing in the scheme. They instructed Plaintiffs to transfer their assets to various bank accounts controlled by Defendants, as detailed in Table A of the Verified Complaint (Dkt. #1, para, 43). As part of this scheme, Mr. Hoffman was specifically instructed to wire $1,963,300 to the bank accounts held and controlled by Dourfaye, Brefko, and Djack. Based upon Defendants' acceptance of this large sum of money from Mr. Hoffman, they were aware of, consented to, and assisted in the illicit scheme designed to defraud Plaintiffs of their assets for the benefit of their own personal gain. As a result of Dourfaye, Brefko, and Djack's participation in the conspiracy, Plaintiffs suffered damages(Ex. A). Accordingly, Plaintiffs have sufficiently pled a cause of action for conspiracy against Defendants.

### 3. Securities Fraud

Plaintiffs' Verified Complaint sufficiently pleads a cause of action for securities fraud against Defendants. A party asserting a securities fraud claim pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 of the Securities and Exchange Commission regulations must demonstrate that defendants: (1) the defendant made a false statement or omission; (2) of a material fact (3) with scienter; (4) in connection with a purchase or sale of securities; (5) upon which the plaintiff justifiably relied; (6) and the false statement proximately caused the plaintiff's damages. *Caremark, Inc. v. Coram Healthcare Corp.,* 113 F.3d 645, 648 (7th Cir. 1997). The pleadings of the fraud counts also require that the who, what, when, where and how of the alleged fraud. *Simons v. Ditto Trade, Inc.,* 63 F. Supp. 3d 874, 878(N.D. Ill. 2014).

Plaintiffs' Verified Complaint demonstrates that Defendants, in furtherance of a fraudulent real estate investment scheme knowingly made misrepresentations and omissions of material fact to induce Plaintiffs to invest their assets in these alleged securities. In fact, making fake stories, Defendants convinced Plaintiffs to transfer their assets into bank accounts held by Defendants as

detailed in Table A, thereby fraudulently gaining access and control over Plaintiffs' assets. In furtherance of the securities fraud, Defendants accepted and took possession of Plaintiff's funds, while purposefully omitting the material fact that Plaintiffs' assets were not actually being used to purchase the real estate in German, contrary to Mr. Hoffman's reasonable understanding of the investment. Plaintiffs believed they were purchasing securities[1] from Defendants, but instead their money was being stolen. This conduct is a direct violation of Section 10(b) of the Exchange Act and Rule 10b-5 of the Securities Exchange Commission regulations and therefore Plaintiffs have sufficiently pled a cause of action for securities fraud against Defendants.

### 4. Unjust Enrichment

Plaintiffs' Verified Complaint sufficiently pleads a cause of action for Unjust Enrichment against Defendants. To state a claim for unjust enrichment under Illinois law, a Plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 517 (7th Cir. 2011). The Supreme Court of Illinois has explained that the defendant's retention of a benefit is unjust under any of three conditions: (1) the benefit should have been given to the plaintiff but was mistakenly given to the defendant; (2) the defendant procured the benefit through wrongful conduct; or (3) the plaintiff simply has a better claim to the benefit than the defendant. *Damian v. Courtright,* 2021 U.S. Dist. LEXIS 138602, *13-1.

The courts have long recognized claims of unjust enrichment in cases involving fraudulent schemes, much like ours. See *Kopecky v. RJM Invs.,* 2009 U.S. Dist. LEXIS 76009, 2009 WL

---

[1] The alleged German real estate investment scheme constituted "securities" as defined by the Securities Act, because "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." *Alexander V. Horizon Corp.*, 1980 U.S. Dist. LEXIS 11850, *4(N.D. Ill, 1980).

274615, at *3 (N.D. Ill. Aug. 26, 2009) (finding the defendants were unjustly enriched for retaining profits in an alleged "fraudulent scheme"). Within this fraudulent real estate investment scheme, Defendants here secured investments through fraudulent representations, the fabrication of documents, and other wrongful conduct. Plaintiffs invested their money into the fraudulent house deal, and the funds used in the investment should rightfully belong to Plaintiffs, rather than being mistakenly directed to Defendants. Allowing Defendants to retain Plaintiffs' assets would be both unconscionable and contrary to the fundamental principles of justice, equity, and good conscience. Thus, Plaintiffs have sufficiently pled a cause of action for Unjust Enrichment against Defendants.

**5**. **Constructive Trust**

Plaintiffs' Verified Complaint sufficiently pleads a cause of action for Constructive Trust against Defendants. In order to justify the imposition of a constructive trust, "a plaintiff must show the existence of identifiable property to serve as the res upon which a trust can be imposed and possession of that res or its product by the person who is to be charged as the constructive trustee." *Salamon v. Messina,* No. 87 C 2097, 1990 U.S. Dist. LEXIS 16852, 1990 WL 205454, at *3 (N.D. Ill. Dec. 5, 1990).

Plaintiffs seek to impose a constructive trust upon bank accounts that are currently held and controlled by Defendants. Furthermore, Plaintiffs call for the restoration of funds and assets that were wrongfully obtained by Defendants, because they are not entitled to the $1,963,300 in equity and good conscience. See *Swedish American Hosp. Ass'n of Rockford v. Illinois State Med. Inter-Ins. Exchange,* 395 Ill. App. 3d 80, 916 N.E.2d 80, 103, (Ill. App. Ct. 2009) (a constructive trust may be imposed where "a person obtains money to which he is not entitled, under circumstances such that in equity and good conscience he ought not to retain it). Thus, Plaintiffs have sufficiently pled a cause of action for Constructive Trust against Defendants.

13

    **c)**   **Default Judgment is an Appropriate Remedy**

To determine whether default judgment is proper, the Court must make factual findings as to: (1) whether the party subject to default has a meritorious defense. *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994), and (2) the substantially prejudice suffered by the party seeking default, *Holland v. Cerberus Capital Management*, No. 2:13-cv-00491, 2014 U.S. Dist. LEXIS 161734, at *30 (N.D. Ind. Nov. 18, 2014). The entry of default judgment against Defendants is proper in this action.

First, there is no basis for Defendants to claim any meritorious defense. A defense is meritorious when the "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *Allen Russell Pub., Inc. v. Levy*, 109 F.R.D. 315, 319 (N.D. Ill. 1985). A defendant must provide "'facts which would support a meritorious defense of the action' and offer more than general denials and bare conclusions." *Baker v. OptionIt, Inc*., No. 1:15-cv-2044, 2015 U.S. Dist. LEXIS 168478, at *7 (N.D. Ill. Dec. 17, 2015). Although Defendants were served with the pleadings, they failed to file an answer, or other responsive pleading to the Verified Complaint. Accordingly, there is no basis for Defendants to claim meritorious defenses.

Second, Plaintiffs have been substantially prejudiced by Defendants' failure to answer because Plaintiffs have been "prevented from prosecuting [their] case, engaging in discovery, and seeking relief in the normal fashion" and will have "no other means of seeking damages for the harm caused by Defendant[s] without the Court's granting a default judgment." *Latta v. Boules*, 2023 U.S. Dist. LEXIS 117646 at *3. *see also Barrett v. Tri-Coast Pharm*., 518 F. Supp. 3d 810, 829-30 (stating that prejudice occurs when a plaintiff has no other means to vindicate rights and recover damages.). Based on the foregoing, default judgment is a proper remedy and should be granted.

14

### d) Plaintiffs are Entitled to Damages

A defendant is liable, by virtue of its default, for the claims raised in the complaint and, accordingly, "well-pled allegations…relating to liability" are taken as true. *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). The Court has "broad latitude" in determining damages, specifically when the defendant's conduct or failure to defend contributes to the Court's difficulty in making a determination. *Nokes v. Cavalry Firm*, No. 15-3354, 2016 U.S. Dist. LEXIS 102012, at *7-8 (C.D. Ill. Aug. 3, 2016). Though Federal Rule of Civil Procedure 55(b)(2) provides that a court may hold a hearing or conduct an investigation if necessary to determine the amount of damages, no such inquiry is necessary if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1320 (7th Cir. 1983). "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States,* 323 U.S. 1, 12, 65 S. Ct. 16, 89 L. Ed. 3, 102 Ct. Cl. 846 (1944).

Plaintiffs are entitled to default judgment against Brefko, Dourfaye, and Djack in the amount of $3,518,300 (DKT #1, para. 6 & 43). Plaintiffs' Verified Complaint and bank wire transfer receipts demonstrate that Plaintiffs were fraudulently induced to wire a total of $3,518,300 to bank accounts held and controlled by Defendants.

Based upon Defendants' acceptance of the $3,518,300[2] from Plaintiffs, they were aware of, consented to, and assisted in the illicit scheme designed to defraud Plaintiffs of their assets for

---

[2] Three defaulting Defendants actually received a total of $1,963,300 in transfers from Plaintiffs, while Turbo Touchdown, LLC has settled the case with Plaintiffs, and Plaintiffs have filed a separate judgment against Chest Ties Inc.

the benefit of their own personal gain.  It is well established that each member of a conspiracy is jointly and severally liable for all damages resulting from the conspiratorial conduct. *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012); see also *Hoffman-La Roche, Inc. v. Greenberg*, 447 F.2d 872, 874 n. 2 (7th Cir.1971) ("Under Illinois law, parties to a conspiracy are joint tort-feasors; their liability is joint and several. . . The amount of each conspirator's liability is the same as that of his partners."). As the co-conspirators, Dourfaye, Brefko, and Djack are liable for all damages resulting from the fraudulent real estate investment scheme.  Accordingly, this Court should enter default judgment against Dourfaye, Brefko, and Djack in the amount of $3,518,300.

## VI.     CONCLUSION

Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Default Judgment against Defendants Brefko Group LLC, Djack Alt Mint, LLC, And Kader Dourfaye, and enter judgment against them in the amount of $3,518,300.

Respectfully submitted,


By: s/ Gary Zhao
Gary Zhao
Attorney for Plaintiffs


**Amundsen Davis, LLC**
Joseph P. Carlasare  #6308706
Gary Zhao, #6279527
150 North Michigan Avenue, Suite 3300
Chicago, IL 60601
P: 312.894.3200
F: 312.894.3210
jcarlasare@amundsendavislaw.com
gzhao@amundsendavislaw.com